**Edward L. BRIGGS and Suzanne Briggs
on behalf of themselves and their mi-
nor child James Briggs, Plaintiffs,**

v.

**The BOARD OF EDUCATION OF THE
STATE OF CONNECTICUT, et
al., Defendants.**

Civ. No. N–87–100 (TFGD).

United States District Court,
D. Connecticut.

March 7, 1988.

Penn Rhodeen, New Haven, Conn., for plaintiffs.

Lubbie Harper, Jr., New Haven, Conn., Jane S. Scholl, Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

DALY, Chief Judge.

James Briggs is a young boy who suffers from a moderate to severe hearing loss in both ears and mild to moderate speech and language delays. His parents have brought the above-captioned action pursuant to the Education of All Handicapped Children Act (EAHCA), 20 U.S.C. §§ 1400 *et seq.*, seeking reimbursement of costs incurred in placing James in a private school. In accordance with an agreement of the parties reached at a pretrial conference, plaintiffs filed a motion for judgment on the record, and defendants have timely filed responses in opposition to the motion. Although allowed to do so under § 1415(e)(2), the parties chose not to present any additional evidence that had not been presented at the state administrative proceedings before a hearing officer appointed by the Connecticut State Board of Education pursuant to Conn.Gen.Stat. § 10–76h. The record before this Court therefore consists solely of the transcripts, exhibits, and decision of the administrative proceedings.

## BACKGROUND

This action involves a dispute over whether the educational program offered James by defendant New Haven Board of Education is appropriate under the standards of the EAHCA. At the request of his parents, a Planning and Placement Team of the New Haven Board evaluated James and recommended that he be placed in New Haven's preschool program for hearing-impaired children. *See* Conn.Gen. Stat. § 10–76h(a). The preschool program offered by the New Haven Board is housed in a public elementary school and includes seven children, all of whom have hearing disabilities. The program emphasizes

speech and language development for the hearing impaired, using auditory trainers and materials specially designed for the hearing impaired. The classes are taught by a certified teacher of the hearing impaired along with two aides.

James's parents objected to the recommendation and instead placed him in a private preschool program called Soundings. Most of its students, however, are not handicapped. The Soundings program has approximately eighteen to twenty children, several of whom have speech and language problems and at least one of whom is hearing impaired. The director of the Soundings program is a certified speech and language pathologist and is assisted by three staff members. Soundings provides a typical preschool program with additional speech and language therapy for those children requiring it. At Soundings, James receives a twenty-minute session of speech and language therapy during each four-hour day he attends the school.

Pursuant to Conn.Gen.Stat. § 10–76h, James's parents requested the appointment of an impartial hearing officer to review the decision of the New Haven Board. After two days of hearings, the hearing officer concluded that although James had benefitted from the Soundings program, the New Haven program was appropriate and reasonably designed to meet James's educational requirements. Moreover, the hearing officer determined that James's parents had failed to support their position that James should be educated with non-handicapped children.

## DISCUSSION

■ The EAHCA authorizes the provision of federal monies to assist states and localities in the education of handicapped children upon compliance with various procedural and substantive conditions. Section 1412(5) of the EAHCA provides that states must assure that

to the maximum extent appropriate, handicapped children ... are educated with children who are not handicapped, and that special classes, separate schooling, or other removal of handicapped chil-

dren from the regular educational environment occurs only when the nature of the severity of the handicap is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily....

20 U.S.C. § 1412(5). This provision evinces a strong, albeit not absolute, congressional preference for educating handicapped children with nonhandicapped children, or "mainstreaming." *Board of Educ. v. Rowley*, 458 U.S. 176, 181 n. 4, 102 S.Ct. 3034, 3038 n. 4, 73 L.Ed.2d 690 (1982); *A.W. by N.W. v. Northwest R–1 School Dist.*, 813 F.2d 158, 162 (8th Cir.), *cert. denied*, — U.S. ——, 108 S.Ct. 144, 98 L.Ed.2d 100 (1987).

■ The EAHCA provides that an aggrieved party may appeal the decision of a state hearing officer in a civil action brought in either state or federal court. 20 U.S.C. § 1415(e)(2). In such an action, "the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." *Id.* The Act thus contemplates *de novo* review, entitling the court to render an independent determination from both the record of the administrative proceedings and any additional evidence presented to it. *Bonadonna v. Cooperman*, 619 F.Supp. 401, 407 (D.N.J.1985); *Flavin v. Connecticut State Bd. of Educ.*, 553 F.Supp. 827, 831 (D.Conn.1982).

In *Rowley*, the Supreme Court warned that "the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." *Board of Educ. v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 3051, 73 L.Ed. 2d 690 (1982). Moreover, the Court noted that, although *de novo* review is required, the reviewing court must still give "due weight" to the determinations of the state administrative proceedings. *Id.* In assessing the appropriateness of the educational

program offered by the state in *Rowley*, the Court held that the proper inquiry was twofold: "First, has the State complied with the procedural requirements set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" *Id.* at 206–07, 102 S.Ct. at 3051 (footnotes omitted).

■ Unlike the instant case, *Rowley* involved a controversy over the types of supportive services that should be made available to a hearing-impaired student who was already mainstreamed. The EAHCA provided no substantive standards for the resolution of the question of which educational services were more appropriate. Accordingly, the Supreme Court avoided the imposition of its own view of an appropriate educational program by crafting a relatively deferential standard in the second prong of its inquiry. The instant case, however, poses an issue for which the EAHCA does provide substantive guidance. Specifically, § 1412(5) creates a strong preference in favor of mainstreaming, requiring that mainstreaming be provided to the "maximum extent appropriate." Therefore, when a challenge to an educational program raises the issue of mainstreaming, the second element of the *Rowley* inquiry must be adjusted to account for the strong congressional preference for mainstreaming.

The Court of Appeals for the Sixth Circuit has suggested an insightful and useful standard for examining the issue of mainstreaming:

In a case where the segregated facility is considered superior, the court should determine whether the services which make the placement superior could feasibly be provided in a non-segregated setting. If they can, the placement in the segregated school would be inappropriate under the Act. Framing the issue in this manner accords the proper respect for the strong preference in favor of mainstreaming while still realizing the possibility that some handicapped children simply must be educated in segregated

facilities either because the handicapped child would not benefit from mainstreaming, because any marginal benefits received from mainstreaming are far outweighed by the benefits gained from services which could not feasibly be provided in the non-segregated setting, or because the handicapped child is a disruptive force in the non-segregated setting.

*Roncker on behalf of Roncker v. Walter*, 700 F.2d 1058, 1063 (6th Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 171 (1983). *Accord A.W. by N.W.*, 813 F.2d at 163; *Bonadonna*, 619 F.Supp. at 407. Moreover, underlying this standard is the assumption that a philosophical disagreement with mainstreaming as an approach to the education of handicapped children is not a permissible basis for refusing to provide a mainstreamed educational program. *Roncker*, 700 F.2d at 1063; *Bonadonna*, 619 F.Supp. at 407. *See also Springdale School Dist. # 50 v. Grace*, 693 F.2d 41, 43 (8th Cir.1982), *cert. denied*, 461 U.S. 927, 103 S.Ct. 2086, 77 L.Ed.2d 298 (1983).

The state hearing officer came to the conclusion that New Haven's preschool program was appropriate. Although discerning the reasoning of the hearing officer from the brief decision he issued is somewhat difficult, it does appear that he did not apply the proper legal standard in this case. For instance, the hearing officer concluded that the Board's recommended program was "reasonably designed to meet [James's] special educational needs and is therefore an appropriate program for him at this time." State Board's Exh. 18, at 6 (decision of the hearing officer). That a program was "reasonably designed" is not sufficient under the Act when the challenge to the program is that it did not provide a mainstream setting to the maximum extent appropriate. Instead, the proper inquiry is whether or not the services offered could feasibly be provided in a mainstream program. *Roncker*, 700 F.2d at 1062–63.

From the record before this Court, it is evident that the program the New Haven Board recommended for James could feasibly have been offered in a much less segre-

gated setting, if not in a substantially mainstreamed program such as that offered by Soundings. Even though the program envisioned by the New Haven Board included intensive adult intervention and language therapy, the Court is convinced that the most if not all of these elements of the program could be incorporated into a non-segregated program, enabling James to enjoy the benefits of interacting and learning with nonhandicapped children. The New Haven Board does not argue that placing James in a mainstream program would be excessively disruptive or costly. Therefore, the only basis for arguing that the segregated program is appropriate under the EAHCA is that any benefit to James from mainstreaming would be nil or would be outweighed by the loss of services that cannot be provided in the mainstreamed setting.

Obviously, the services offered in a mainstreamed program would not be identical in all facets with the Board's recommended program. Nevertheless, the benefits to James from obtaining the services in a mainstream setting outweigh any marginal loss of the effectiveness of those services provided in a mainstream rather than segregated program. First, James would benefit from the opportunity to learn with nonhandicapped children in several ways, including developing social skills and using nonhandicapped children as language models. Second, the diminished effectiveness of language therapy in a mainstreamed program, if any, appears from the evidence before this Court to be minimal. As the hearing officer himself found, James has made significant progress at the mainstreamed program at Soundings. On balance, the Court must conclude that James would benefit from mainstreaming and a segregated program would be inappropriate under the EAHCA.

Although the Court in no way questions the sincerity of the New Haven Board and its employees in seeking to provide an appropriate education for James, the evidence indicates that the Board did not meet the EAHCA's requirement that mainstreaming be provided to the maximum extent appropriate. The Court therefore concludes, by the preponderance of the evidence before this Court and after giving due weight to the findings of the state hearing officer, that the program offered by the New Haven Board was inappropriate within the meaning of the EAHCA, and that James was denied his right to a free public education guaranteed by the Act.

Because the New Haven Board did not provide James with an appropriate educational program, his parents are entitled to reimbursement of the costs of enrolling him in the private program at Soundings. Section 1415(e)(2) of the EAHCA directs the court to "grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2). Reimbursement is included in this broad grant of discretion to determine appropriate relief. *Burlington School Comm. v. Department of Educ.*, 471 U.S. 359, 369–70, 105 S.Ct. 1996, 2002–03, 85 L.Ed.2d 385 (1985). Soundings provides an appropriate program under the Act, and the unilateral placement of James in the Soundings program does not affect the right to reimbursement. *Id.* at 372–73, 105 S.Ct. at 2003–04.

Accordingly, plaintiffs' motion for judgment on the record is hereby GRANTED.