700 F.2d 1058
 9 Ed. Law Rep. 827
 Mary Ann RONCKER On Behalf of Neill RONCKER, Individually
and on behalf of all others similarly situated,
Plaintiff-Appellant,
v.
Franklin B. WALTER, et al., Defendants,
James N. Jacobs, in his official capacity as Superintendent
of the Cincinnati City School District and Cincinnati City
School District Board of Education; Robert Braddock,
Herbert Brown, Virginia Griffin, Ann Patty, John Rue, David
Schiering and Mary Schloss, in their official capacities as
the members of the Cincinnati City School District Board of
Education, Defendants-Appellees.
 No. 81-3494.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 18, 1982.
Decided Feb. 23, 1983.
 
 Barry Cohen (argued), Columbus, Ohio, for plaintiff-appellant.
 Patricia W. Morrison (argued), Hugh Frost, Asst. City Sols., Richard A. Castellini, Cincinnati, Ohio, for defendants-appellees.
 Before KENNEDY and CONTIE, Circuit Judges, and GORDON, Senior District Judge.*
 CONTIE, Circuit Judge.
 
 
 1
 In this appeal, the plaintiff challenges the placement of her retarded son under the Education for All Handicapped Children Act of 1975, 20 U.S.C. Sec. 1401 et seq., (the Act).[1] As a condition for receiving federal aid, the Act provides that a free appropriate education must be provided to all children. 20 U.S.C. Sec. 1412. It further requires states to establish "procedures to assure that, to the maximum extent appropriate, handicapped children, including children in public or private institutions or other care facilities, are educated with children who are not handicapped and that special classes, separate schooling, or other removal of handicapped children from the regular educational environment occurs only when the nature or severity of the handicap is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. Sec. 1412(5)(B).[2]
 
 
 2
 The Supreme Court recently decided what "free appropriate education" means in the context of the Act. Bd. of Ed. of the Hendrick Hudson Central School District v. Rowley, --- U.S. ----, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). In this case, we examine the Act's requirement that handicapped children be educated with non-handicapped children to the "maximum extent appropriate."
 
 
 3
 * The plaintiff's son, Neill Roncker, is nine years old and is severely mentally retarded. He is classified as Trainable Mentally Retarded (TMR), a category of children with an IQ of below 50. Less severely retarded students are classified as Educable Mentally Retarded (EMR) and are generally educated in special classes within the regular public schools.
 
 
 4
 There is no dispute that Neill is severely retarded and has a mental age of two to three with regard to most functions. Neill also suffers from seizures but they are not convulsive and he takes medication to control them. No evidence indicates that Neill is dangerous to others but he does require almost constant supervision because of his inability to recognize dangerous situations.
 
 
 5
 In 1976, Neill was evaluated and recommended for the Arlitt Child Development Center. It was believed that he would benefit from contact with non-handicapped children. In the spring of 1979, a conference was held to evaluate Neill's Individual Education Plan (IEP) as required by the Act.[3] Present at the conference were Neill's parents, school psychologists, and a member of the Hamilton County Board of Mental Retardation. After evaluating Neill, the school district decided to place him in a county school. Since these county schools were exclusively for mentally retarded children, Neill would have received no contact with non-handicapped children.
 
 
 6
 The county schools receive part of their funding through tuition for individual students, which is paid by the school district. The county schools also receive partial funding through the state by virtue of a mental retardation tax levy. Funds from this levy are not available to public schools.
 
 
 7
 The Ronckers refused to accept the placement and sought a due process hearing before an impartial hearing officer pursuant to the Act. 20 U.S.C. Sec. 1415(b)(2). The hearing officer found that the school district had not satisfied its burden of proving that its proposed placement afforded the maximum appropriate contact with non-handicapped children. He ordered that Neill "be placed within the appropriate special education class in the regular elementary school setting."
 
 
 8
 The school district appealed to the Ohio State Board of Education pursuant to 29 U.S.C. Sec. 1415(c). The State Board found that Neill required the educational opportunities provided by the county school. It also found, however, that he needed interaction with non-handicapped children during lunch, recess and transportation to and from school. Accordingly, the State Board held that Neill should be placed in a county school so long as some provision was made for him to receive contact with non-handicapped children. The State Board did not indicate how this split program was to be administered.
 
 
 9
 While the dispute over placement continued, Neill began attending a class for the severely mentally retarded at Pleasant Ridge Elementary School in September 1979. Pleasant Ridge is a regular public school which serves both handicapped and non-handicapped children. Neill's contact with non-handicapped children at Pleasant Ridge is limited to lunch, gym and recess. Neill has remained at Pleasant Ridge during the pendency of this action.
 
 
 10
 In January 1980, Neill's mother filed this action against the state and the school district. The claims against the state were settled. Prior to trial, the district court denied class certification without a hearing.
 
 
 11
 At trial, both parties presented expert testimony. Both agreed that Neill required special instruction; he could not be placed in educational classes with non-handicapped children. The plaintiff, however, contended that Neill could be provided the special instruction he needed in a setting where he could have contact with non-handicapped children. The school district contended that Neill could not benefit significantly from mainstreaming and that any minimal benefits would be greatly outweighed by the educational benefits of the county school.
 
 
 12
 The district court found in favor of the school district. The court interpreted the Act's mainstreaming requirement as allowing school districts broad discretion in the placement of handicapped children. In this case, the district court found that the school district did not abuse its discretion in placing Neill Roncker in a school where he would receive no contact with non-handicapped children. This conclusion was supported by the district court's finding that Neill had made no significant progress after 18 months at Pleasant Ridge. Finally, the district court held that a class action was inappropriate because the educational placement of handicapped children requires individual determinations.
 
 II
 
 13
 We find that the district court erred in reviewing the school district's placement decision under an "abuse of discretion" standard.
 
 
 14
 The Act provides that a district court "shall receive the records of the [state] administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. Sec. 1415(e)(2). The school district contends that this provision only gives courts the limited authority to determine if the district has complied with the procedural requirements of the Act. The plaintiff, on the other hand, contends that the Act requires a de novo review not limited to the Act's procedural requirements.
 
 
 15
 This exact dispute over standard of review was presented and decided in Rowley, --- U.S. ----, 102 S.Ct. 3034, 73 L.Ed.2d 690. The Supreme Court rejected the notion that courts were strictly limited to reviewing for procedural compliance with the Act. Id. at 3050-51. However, the Court also rejected the argument that the Act gave the courts broad power to review and upset placement decisions, stating that "the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Id. at 3051. The court concluded that the proper balance is to give greater deference to the state's placement decision if the procedural requirements of the Act are met. In this way, the court's encroachment on the basically legislative decisions involving the distribution of educational resources is kept to a minimum.[4]
 
 
 16
 The first inquiry in the two-step test mandated by Rowley is whether the state has complied with the Act's procedural requirements. These requirements clearly have been satisfied in this case. The second inquiry is whether "the individualized educational program developed through the Act's procedures [is] reasonably calculated to enable the child to receive educational benefits?" Id. at 3051.
 
 
 17
 In Rowley, the Supreme Court found that the state had complied with the Act's procedural requirements and had developed an IEP reasonably calculated to lead to educational benefits. Accordingly, the Act was satisfied. The present case differs from Rowley in two significant ways.
 
 
 18
 First, this case involves the mainstreaming provision of the Act while Rowley involved a choice between two methods for educating a deaf student. In the latter case, the dispute is simply one of methodology and the Supreme Court has emphatically stated that such questions should be left to the states. Id. at 3051-52. In the present case, the question is not one of methodology but rather involves a determination of whether the school district has satisfied the Act's requirement that handicapped children be educated alongside non-handicapped children to the maximum extent appropriate. The states accept federal aid in return for compliance with the Act. Since Congress has decided that mainstreaming is appropriate, the states must accept that decision if they desire federal funds.
 
 
 19
 Second, in this case, the district court failed to give "due weight" to the state administrative proceedings. Rowley, 102 S.Ct. at 3051. Both the impartial hearing officer and the State Board of Education found that the school district's placement did not satisfy the Act's mainstreaming requirement. Under such circumstances, the district court erred in reviewing the school district's placement under the deferential abuse of discretion standard. Such a standard of review renders the administrative hearings provided for by the Act virtually meaningless. By way of contrast, in Rowley, the administrative hearings unanimously concurred with the original placement but the district court found the placement to be inappropriate.
 
 
 20
 In sum, the abuse of discretion standard of review utilized by the district court was improper under the Act. We further find that the standard of review as set out in Rowley requires a de novo review but that the district court should give due weight to the state administrative proceedings in reaching its decision.
 
 III
 
 21
 Since the district court employed an improper standard of review, we remand this case in order to allow the district court to re-examine the mainstreaming issue in light of the proper standard of review.[5]
 
 
 22
 The Act does not require mainstreaming in every case but its requirement that mainstreaming be provided to the maximum extent appropriate indicates a very strong congressional preference.[6] The proper inquiry is whether a proposed placement is appropriate under the Act. In some cases, a placement which may be considered better for academic reasons may not be appropriate because of the failure to provide for mainstreaming. The perception that a segregated institution is academically superior for a handicapped child may reflect no more than a basic disagreement with the mainstreaming concept. Such a disagreement is not, of course, any basis for not following the Act's mandate. Campbell v. Talladega City Bd. of Education, 518 F.Supp. 47, 55 (N.D.Ala.1981). In a case where the segregated facility is considered superior, the court should determine whether the services which make that placement superior could be feasibly provided in a non-segregated setting. If they can, the placement in the segregated school would be inappropriate under the Act. Framing the issue in this manner accords the proper respect for the strong preference in favor of mainstreaming while still realizing the possibility that some handicapped children simply must be educated in segregated facilities either because the handicapped child would not benefit from mainstreaming, because any marginal benefits received from mainstreaming are far outweighed by the benefits gained from services which could not feasibly be provided in the non-segregated setting, or because the handicapped child is a disruptive force in the non-segregated setting. Cost is a proper factor to consider since excessive spending on one handicapped child deprives other handicapped children. See Age v. Bullitt County Schools, 673 F.2d 141, 145 (6th Cir.1982). Cost is no defense, however, if the school district has failed to use its funds to provide a proper continuum of alternative placements for handicapped children. The provision of such alternative placements benefits all handicapped children.
 
 
 23
 In the present case, the district court must determine whether Neill's educational, physical or emotional needs require some service which could not feasibly be provided in a class for handicapped children within a regular school or in the type of split program advocated by the State Board of Education. Although Neill's progress, or lack thereof, at Pleasant Ridge is a relevant factor in determining the maximum appropriate extent to which he can be mainstreamed, it is not dispositive since the district court must determine whether Neill could have been provided with additional services, such as those provided at the county schools, which would have improved his performance at Pleasant Ridge.
 
 
 24
 We recognize that the mainstreaming issue imposes a difficult burden on the district court. Since Congress has chosen to impose that burden, however, the courts must do their best to fulfill their duty. The district courts are not without guidance inasmuch as they have the benefit of two state administrative proceedings and may justifiably give due weight to those administrative findings.
 
 IV
 
 25
 The final issue before us is whether the district court erred in refusing to allow this case to proceed as a class action. Following oral arguments to the district court, a class was certified. That certification was conditional and, prior to trial, the district court denied the motion for class certification without a hearing. We believe that the district court erred and should, on remand, hold a hearing to determine if class relief is appropriate.
 
 
 26
 We find no bar to class actions in the Act. Several courts have certified class actions where the requirements of Rule 23 of the Federal Rules of Civil Procedure were met. See, e.g., Battle v. Commonwealth of Pa., 629 F.2d 269 (3d Cir.1980), cert. denied, 452 U.S. 968, 101 S.Ct. 3123, 69 L.Ed.2d 981 (1981); Garrity v. Gallen, 522 F.Supp. 171 (D.N.H.1981); Green v. Johnson, 513 F.Supp. 965 (D.Mass.1981). That the Act requires individual placement decisions does not of itself bar all class actions. See Califano v. Yamasaki, 442 U.S. 682, 698-701, 99 S.Ct. 2545, 2556-2557 61 L.Ed.2d 176 (1979) (finding no bar to class actions under the Social Security Act despite that Act's provision that actions may be brought by "any individual." 42 U.S.C. Sec. 405(g)).
 
 
 27
 Although we agree with the district court's statement that the Act requires individual determinations as to placement, one of the plaintiff's claims is that the school district automatically sends students classified as Trainable Mentally Retarded to the county schools. Such an allegation, if proven, would show a violation of the Act for the very reason that placements were not individually made. Furthermore, if children are labeled as TMR solely on the basis of IQ scores, the placements would violate Sec. 1412(5)(C) which provides in part that "no single procedure shall be the sole criteria for determining an appropriate educational program for a child." The plaintiff should be given an opportunity to argue that there is sufficient evidence to justify class certification, at least as to certain issues.
 
 
 28
 The judgment of the district court is VACATED and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 29
 CORNELIA G. KENNEDY, Circuit Judge, dissenting.
 
 
 30
 The District Court has already done in part what the panel asks it to do on remand. As required by Rowley, it found that the educational program in which Neill Roncker was to be placed was reasonably calculated to enable him to receive educational benefits. The District Court also found that Neill could not be appropriately educated by continuing him in the self-contained class of handicapped children which he was attending in the regular elementary school.
 
 
 31
 In making these findings the District Court clearly recognized that placement with non-handicapped children should be a most important objective.
 
 
 32
 The recipient of the federal funding, in this case the state and local Boards of Education, is required to provide an education for the handicapped individual and to "insure that handicapped persons participate with non-handicapped persons in such activities and services to the maximum extent appropriate to the needs of the handicapped person in question."
 
 
 33
 District Court Op. at 7.
 
 
 34
 The whole record of the District Court is devoted to the question of whether Neill Roncker's needs can be met in the self-contained handicapped classroom in the elementary school he has been attending or whether he needs to be taught with other children closer to his chronological age and learning level with the support services that can presently only be provided in the 169 program at a separate school. Appellant argues that the finding that Neill could not benefit from continued placement in his present classroom is clearly erroneous. The panel's opinion does not so find and I would not so find. These findings of fact are independent of the District Court's legal conclusions. Neill Roncker was not progressing in his present placement but was regressing. His ability to interact with the non-handicapped children was at best minimal. His opportunity to interact with non-handicapped children there was also very minimal. Yet, despite these findings, the panel's decision requires the District Court to determine on remand whether it would be "feasible" to provide an equivalent of what is now provided in the 169 schools in classrooms located in regular elementary schools. The District Court has admittedly not made such a finding. I do not believe, however, that such an inquiry is authorized by section 1412(5) or the "mainstreaming" concept it embodies.
 
 
 35
 Section 1412(5) requires that participating states establish,(B) procedures to assure that, to the maximum extent appropriate, handicapped children, including children in public or private institutions or other care facilities, are educated with children who are not handicapped, and that special classes, separate schooling, or other removal of handicapped children from the regular educational environment occurs only when the nature or severity of the handicap is such that the education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily ....
 
 
 36
 In this language Congress has expressed a clear preference for educating handicapped children in the regular classrooms of the public schools. Handicapped children should be removed from regular classes only when their education cannot be achieved satisfactorily with the use of supplementary aids and services. Despite this preference for "mainstreaming," however, the statute clearly contemplates that there will be some separate schools and schooling. Rowley, --- U.S. ----, ---- n. 4, 102 S.Ct. 3034, 3038 n. 4, 73 L.Ed.2d 690 (1982). Section 1412(5) does not require that classrooms for the severely mentally retarded, such as Neill Roncker, whose only interaction with non-handicapped children is to observe them, be located in the regular elementary school. Rather, this section is directed to the handicapped child who can spend some time in the regular classroom if given special aids or assistance.[1]
 
 
 37
 Other than cost, the District Court in the present case has fully considered whether Neill Roncker could be educated in a self-contained handicapped classroom in a regular school. The severity of Neill's handicap is such that even with supplementary aids and services, the District Court found that Neill cannot achieve a satisfactory education or indeed any education in a regular class.
 
 
 38
 The appellants have nevertheless argued that if Neill must be educated in a 169 program, that program must be provided within the "regular school environment" even if the only benefit from such placement is to avoid the stigma of attending a special school. Because the 169 program requires children of chronological age with roughly the same developmental ability to be placed together, a classroom for each age could not be located at each regular school. However, the classrooms for one age could be at one school and those for another at a different school. The children could probably be bussed to assemblies. Special gym teachers, physical and occupational therapists and special remedial teachers could go from school to school. Appellant argues that this is required unless the children could learn "zero" in such environment.
 
 
 39
 The appellant's arguments essentially represent one of two competing educational theories presented by this case. The first is that a program with all of the components of the 169 program can only be fully implemented in a separate school. This program alone, it is argued, is appropriate for severely handicapped children such as Neill Roncker who cannot benefit from any regular classroom experience. The second theory is that all handicapped children (except those who can be in the regular classroom) must be placed in special classrooms located in regular elementary schools, unless a child would get zero benefit from a classroom so situated.
 
 
 40
 Rowley held that Congress did not intend the courts to overturn a state's educational policy once the statutory requirements have been met.
 
 
 41
 We previously have cautioned that courts lack the "specialized knowledge and experience" necessary to resolve "persistent and difficult questions of educational policy." San Antonio School District v. Rodriguez, 411 U.S. 1, 42 [93 S.Ct. 1278, 1301, 36 L.Ed.2d 16] (1973). We think that Congress shared that view when it passed the Act. As already demonstrated, Congress' intention was not that the Act displace the primacy of States in the field of education, but that States receive funds to assist them in extending their educational systems to the handicapped. Therefore, once a court determines that the requirements of the Act have been met, questions of methodology are for resolution by the States.
 
 
 42
 Rowley, --- U.S. at ----, 102 S.Ct. at 3052. When Congress imposes a requirement in legislation enacted pursuant to the spending power, it must do so unambiguously. Rowley --- U.S. at ----, 102 S.Ct. at 3049-3050 n. 26; Pennhurst State School v. Halderman, 451 U.S. 1, 17, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981). Section 1412(5), far from unambiguously requiring that school districts place severely handicapped children in the regular school environment even if they cannot be satisfactorily educated in that environment, requires only that handicapped children be "mainstreamed" to the maximum extent appropriate. For those more severely retarded children, such as Neill Roncker, who are unable to be satisfactorily educated in any respect in a regular classroom, the statute does not prohibit the school district from making the judgment as to where their classrooms should be located.[2]
 
 
 43
 I do not read the panel's decision as adopting the appellant's zero benefit position. For example, to the extent that the panel directs the District Court to consider costs it reserves some discretion to that court. Presumably, the District Court is permitted to decide whether one program is excessively expensive in comparison to another. Further, depending upon which definition of the word "feasible" the panel intends, i.e., (1) capable of being done; (2) capable of being dealt with successfully, suitable; or, (3) reasonable,[3] the District Court may have yet more discretion. If the District Court may make these discretionary decisions in determining whether a placement is appropriate, I see no grounds on which the school district should be denied such discretion insofar as placement of handicapped children who cannot benefit from any regular classes are concerned.
 
 
 44
 Finally, I am unable to agree that the District Court failed to give "due weight" to the state administrative proceedings. The disposition by the District Court was based upon Neill Roncker's progress and lack of progress in a special classroom. The administrative hearing officers did not have this actual information concerning Neill's progress but could only anticipate what his progress might be.[4]
 
 
 45
 Further, the two administrative decisions cannot themselves be fully reconciled. The impartial hearing officer, in making the initial decision of August 1979, appears to have been uncertain whether Neill would be able to handle assignment to a regular first grade class, something it is now clear he could not do.
 
 
 46
 There is doubt in the mind of the impartial hearing officer as to Neill's ability to attend the regular first grade setting, however, I don't believe that the complete answer is available to this question until he is assigned to the first grade and the attempt is made.
 
 
 47
 Hearing Officer's Op., App. at 195.
 
 
 48
 The hearing officer nonetheless directed that Neill be placed in the special education class in the regular school setting.
 
 
 49
 On appeal by the school district, the state board of education referee found that Cincinnati did not have to duplicate the 169 program in a regular elementary school as the hearing officer had mandated. She found, "Cincinnati has shown that the nature and severity of Neill's handicap warrants his removal from the regular educational environment ...." App. 210. She also found that placement in the 169 program at Dyer School was appropriate as long as Neill was provided an opportunity to interact with non-handicapped peers in a regular school setting in appropriate activities such as lunch, gym and transportation. How this was to be accomplished was not described, but it is suggested that an aide would transport him to the regular school for lunch and recess and perhaps some time in the future, art and music.
 
 
 50
 Neither appellant nor appellees are satisfied with this split attendance solution. "[C]ounsel for both the Ronckers and the school district expressed their opposition to the referee's proposed split attendance scheme as being inappropriate for Neil [sic] ...." App. 15. More importantly, although a number of experts testified, no witness endorsed split placement. Under these circumstances, where no expert witness approved or endorsed split placement, I do not believe we should suggest it as an appropriate placement.
 
 
 51
 I would affirm the judgment of the District Court that Neill Roncker's placement satisfies the requirements of section 1412(5).
 
 
 
 *
 The Honorable James F. Gordon, Senior Judge, United States District Court for the Western District of Kentucky, sitting by designation
 
 
 [1]
 For extensive discussions as to the legislative history and background of the Act, see Bd. of Education of the Hendrick Hudson Central School District v. Rowley, --- U.S. ----, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); Note, Enforcing the Right to an "Appropriate" Education: The Education for All Handicapped Children Act of 1975, 92 HARV.L.REV. 1103 (1979)
 
 
 [2]
 The concept that handicapped children should be educated along with non-handicapped children is popularly known as "mainstreaming."
 
 
 [3]
 20 U.S.C. Sec. 1401(19) provides:
 The term "individualized education program" means a written statement for each handicapped child developed in any meeting by a representative of the local educational agency or an intermediate educational unit who shall be qualified to provide, or supervise the provision of, specially designed instruction to meet the unique needs of handicapped children, the teacher, the parents or guardian of such child, and, whenever appropriate, such child, which statement shall include (A) a statement of the present levels of educational performance of such child, (B) a statement of annual goals, including short-term instructional objectives, (C) a statement of the specific educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs, (D) the projected date for initiation and anticipated duration of such services, and (E) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved.
 
 
 [4]
 States which desired even less federal intrusion could simply decline to participate in the program. It should also be noted that challenges to administrative decisions may be filed in either state or federal court
 
 
 [5]
 Unlike the dissent, we are unwilling to accept the district court's findings of fact as being totally independent from its conclusions of law. Having found that the District Court erred in its conclusions of law, we believe that remanding the case is preferable to attempting to apply the proper legal standard to factual findings which were made under an overly deferential standard of review
 
 
 [6]
 The Act's mainstreaming requirement applies to non-academic activities such as lunch, gym, recess and transportation to and from school. See 34 C.F.R. Sec. 300.553
 
 
 [1]
 It is not necessary to decide whether the child who can attend a regular gym, or music class, falls within the statute's mainstreaming requirement
 
 
 [2]
 This does not mean that the District Court does not review a placement to determine whether a child is receiving an appropriate education as defined in 20 U.S.C. Sec. 1401(18)
 
 
 [3]
 Webster's New International Dictionary (2d Ed.1961): 1. Capable of being done, executed, or effected; possible of realization. 2. Capable of being managed, utilized or dealt with successfully; suitable. 3. Likely; probable; reasonable
 Random House College Dictionary (1st Ed.1975): 1. capable of being done or accomplished. 2. suitable. 3. probable; likely.
 It is difficult in the context of this case to determine exactly which definition of "feasible" the panel intends. Since other school districts locate all handicapped classrooms in regular schools and Cincinnati previously did so, the record would require a finding that it is capable of being done. Therefore, I do not believe the panel intends this definition of feasible. In addition, the record discloses that these classes for the severely mentally retarded which had previously been dispersed among regular schools were not effective. Thus, the second definition of feasible seems equally inappropriate to remand in this case.
 
 
 [4]
 Since this case is to be remanded, it will be important that the District Court have current information with respect to Neill's present development and abilities before making a final disposition