**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| R. E. B., individually and on behalf of his minor child, J.B., *Plaintiff-Appellant*, v. STATE OF HAWAII DEPARTMENT OF EDUCATION; KATHRYN MATAYOSHI, in her official capacity as Superintendent of the Hawaii Public Schools, *Defendants-Appellees.* | No. 14-15895 D.C. No. 1:13-cv-00016-DKW-BMK OPINION |

Appeal from the United States District Court
for the District of Hawaii
Derrick Kahala Watson, District Judge, Presiding

Argued February 23, 2017;
Submitted September 13, 2017
Honolulu, Hawaii

Filed September 13, 2017

Before: Alex Kozinski, Michael Daly Hawkins
and Carlos T. Bea, Circuit Judges.

Per Curiam Opinion;
Dissent by Judge Bea

# SUMMARY[*]

## Individuals with Disabilities Education Act

The panel affirmed in part and reversed in part the district court's judgment in favor of the Hawaii Department of Education in an action brought under the Individuals with Disabilities Education Act by a parent, individually and on behalf of his child, a student receiving special education and related services.

Plaintiff objected to an individualized education plan for the student's transition from a private school into public kindergarten. The panel held that the case was not moot because it could still grant effectual relief.

On the merits, reversing in part, the panel held that transition services under the IDEA are not limited to students exiting the public school system. Rather, where transition services become necessary for disabled children to be educated and participate in new academic environments, these services must be included in individualized education programs in order to satisfy the IDEA's "supplementary aids and services" requirement. The panel held that the Department of Education violated the IDEA by failing to address transition services in the proposed IEP.

The panel held that the Department of Education also violated the IDEA by failing to specify in the IEP the least restrictive environment during the regular and extended

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

school year. This infringed the parent's opportunity to participate in the IEP process and was therefore a denial of a free appropriate public education.

Affirming in part, the panel held that the IEP was not required to specify the qualifications of a one-on-one aide.

Finally, the panel held that the Department of Education violated the IDEA by failing to specify Applied Behavioral Analysis as a teaching methodology in the IEP because this methodology was integral to the student's education.

The panel remanded the case to the district court for determination of the proper remedy.

Dissenting in part, Judge Bea agreed that the case was not moot, and he agreed with the portions of the majority opinion affirming the district court. Dissenting from the holdings that found error, Judge Bea wrote that the Department of Education responded to the plaintiff's concerns about the student's transition, did not violate the IDEA's least restrictive environment requirement, and was not required to specify the particular teaching methodology.

## COUNSEL

Keith H.S. Peck (argued), Law Office of Keith H.S. Peck, Honolulu, Hawaii; Lawrence R. Cohen, Badger Arakaki LLC, Honolulu, Hawaii; for Plaintiff-Appellant.

Gary S. Suganuma and Holly T. Shikada, Deputy Attorneys General; David M. Louie, Attorney General; Office of the Attorney General, Honolulu, Hawaii; for Defendants-Appellees.

## OPINION

PER CURIAM:

We consider whether the district court erred in affirming an administrative officer's determination that J.B., an autistic student protected by the Individuals with Disabilities Education Act ("IDEA"), was denied a free appropriate public education ("FAPE").

## FACTS

Before and during this lawsuit, J.B. attended the Pacific Autism Center ("PAC"), a small private school for students with autism and other special needs. During that time, Hawaii Department of Education ("DOE") personnel convened to develop an Individualized Education Plan ("IEP") for J.B.'s transition from PAC into public kindergarten. J.B. raised various objections to aspects of the proposed IEP, but the presiding administrative hearings officer found that the IEP was adequate. J.B. appeals from the district court's affirmation of that determination.

## DISCUSSION

As a threshold matter, DOE claims this case is now moot because J.B. received relief beyond that originally requested. J.B. initially sought reimbursement of PAC tuition for the 2012–13 school year, and DOE funded J.B.'s tuition at PAC from 2012 until 2015. But a case is moot "only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Decker* v. *Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1335 (2013) (citation omitted). J.B's due process complaint sought reimbursement for transportation and compensatory education, in addition to reimbursement for tuition at PAC. Because we can still grant effectual relief, this case is not moot.

Turning to J.B.'s specific objections to the proposed IEP, he first argues that DOE violated the IDEA procedurally by refusing to address his father's concerns about the transition from PAC to a public school. Some Hawaii district courts have noted that the IDEA mentions transition services only with respect to students exiting the public school system, 20 U.S.C. § 1414(d)(1)(A)(i)(VIII)(bb), and thus inferred that transition services need not be provided at any other time. *See J.M.* v. *Dep't of Educ., Haw.*, 224 F. Supp. 3d 1071, 1091 (D. Haw. 2016); *Rachel L.* v. *Haw. Dep't of Educ.*, No. 11-00756, 2012 WL 4472263, at *7 (D. Haw. Sept. 25, 2012) (collecting cases). However, these opinions have read the IDEA too narrowly and are to that extent overruled. The statute provides that IEPs must include "supplementary aids and services" that will allow children to "be educated and participate with other children with disabilities and nondisabled children[.]" 20 U.S.C. § 1414(d)(1)(A)(i)(IV). Services that ease the transition between institutions or programs—whether public or private—serve this purpose.

*Cf.* Cal. Educ. Code § 56345(b) (codifying this broader interpretation of IDEA requirements). Where transition services become necessary for disabled children to "be educated and participate" in new academic environments, transition services must be included in IEPs in order to satisfy the IDEA's "supplementary aids and services" requirement.

Here, J.B.'s father's transition-related concerns centered on the "needed modifications to offset the changes anticipated in J.B.'s program, such as the number of peers or daily routines available to him[.]" J.B. was planning to move from a private school into the public school system for the first time, and these considerations were relevant to his educational participation with other children. Thus, DOE violated the IDEA by failing to address transition services in the proposed IEP.

Second, J.B. claims that DOE violated the IDEA by failing to specify in the IEP the Least Restrictive Environment ("LRE") during the regular and extended school year. The IEP "must include . . . [a]n explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class" and "the anticipated frequency, location, and duration of [the special education] services and modifications." 34 C.F.R. § 300.320(a)(5), (7). J.B.'s IEP contained only the vague statement that J.B. would "receive specialized instruction in the general education setting for Science and Social Studies activities as deemed appropriate by his Special Education teacher/Care Coordinator and General Education teacher." This improperly delegated the determination of J.B.'s placement to teachers outside the IEP process. The language was also too vague to enable J.B. to use the IEP as a blueprint for enforcement. *See Union Sch. Dist.* v. *Smith*, 15 F.3d 1519,

1526 (9th Cir. 1994) ("[A] formal, *specific* offer from a school district will greatly assist parents in 'present[ing] complaints with respect to any matter relating to the . . . educational placement of the child.'") (second alteration in original) (emphasis added) (citation omitted).

Moreover, the IEP didn't detail "the anticipated frequency, location, and duration" of the proposed specialized instruction in J.B.'s Science and Social Studies activities, as required by 34 C.F.R. § 300.320(a)(7). This fails to meet the legally required threshold of specificity. DOE further failed to discuss appropriately "(1) the educational benefits of placement full-time in a regular class; (2) the non-academic benefits of such placement; (3) the effect [J.B.] had on the teacher and children in the regular class; and (4) the costs of mainstreaming [J.B.]." *Sacramento City Unified Sch. Dist., Bd. of Educ.* v. *Rachel H. ex rel. Holland*, 14 F.3d 1398, 1404 (9th Cir. 1994). DOE's cursory treatment of the *Rachel H.* factors was demonstrated by J.B.'s being mainstreamed into Mandarin—a class obviously inappropriate for him—but not into Science or Social Studies. This "seriously infringe[d]" J.B.'s father's opportunity to participate in the IEP process and was therefore a denial of a FAPE. *See Doug C.* v. *Haw. Dep't of Educ.*, 720 F.3d 1038, 1043 (9th Cir. 2013) (citation omitted).

Third, according to J.B., the IDEA required DOE to specify in the IEP that J.B.'s one-on-one aide would have the same qualifications as a contracted skills worker. But "[n]othing in [20 U.S.C. § 1414(d)] indicates that an IEP must specify the qualifications or training of service providers." *S.M.* v. *Haw. Dep't of Educ.*, 808 F. Supp. 2d 1269, 1274 (D. Haw. 2011). Nor is it established in the

record that DOE agreed to provide such an aide at the IEP meeting.

Finally, J.B. argues that DOE violated the IDEA by failing to specify Applied Behavioral Analysis ("ABA") as a methodology in the IEP. DOE relies on our decision in *J.L.* v. *Mercer Island Sch. Dist.*, 592 F.3d 938, 952 (9th Cir. 2010), to argue that this was not required. But *J.L.* recognized that "school districts should specify a teaching methodology for some students, [while] for other students 'IEPs may not need to address the instructional method to be used because specificity about methodology is not necessary to enable those students to receive an appropriate education.'" *Id.* (citation omitted). In J.L's case, educators found that specificity wasn't appropriate. *Id.* But here, the IEP team discussed ABA at length and recognized that it was integral to J.B.'s education. And ABA is widely recognized as a superior method for teaching children with autism. *See* Ariana Cernius, *"No Imbecile at All": How California Won the Autism Insurance Reform Battle, and Why Its Model Should Be Replicated in Other States*, 10 Harv. L. & Pol'y Rev. 565, 570–72 (2016). When a particular methodology plays a critical role in the student's educational plan, it must be specified in the IEP rather than left up to individual teachers' discretion.

The dissent contends that, because teachers might have needed to use multiple methodologies with J.B., it was unnecessary for the IEP to mention ABA. But specifying ABA in writing would not have precluded the use of other methodologies. It simply would have ensured that ABA would be consistently used in J.B.'s educational program, since even the school district acknowledged that ABA should

be part of J.B.'s education. The IEP's failure to specify ABA was thus a denial of a FAPE.

We remand to the district court for determination of the appropriate remedy.

**AFFIRMED in part, REVERSED and REMANDED in part.**

Costs to appellant.

---

BEA, Circuit Judge, dissenting in part:

Although I agree with the portions of the majority opinion that affirm the district court, I respectfully dissent from the holdings that find error and reverse.[1] For the reasons stated below, I would affirm in full rather than reverse in part.

### 1. The Transition Services Issue

J.B. (the student) had previously attended PAC, a private school, and was going to attend Koko Head Elementary School, a local public school, in the Fall. Before J.B.'s transition to public school, the Hawaii Department of Education ("DOE") and R.E.B. (J.B.'s father) worked together to develop an Individualized Education Plan ("IEP") for J.B. R.E.B. was concerned about the DOE's plan for J.B. to switch classrooms and teachers during the school day and

---

[1] I also agree with the majority that the school district's motion to dismiss the case for mootness should be denied because it is still possible for us to grant effective relief.

that J.B. would receive less personal attention from his teachers than he received at PAC. R.E.B. wanted the school district to provide "transition services" in the form of "supplementary aides or services" while J.B. was adjusting to public school. On appeal, R.E.B. contends that the DOE violated the Individuals with Disabilities Education Act ("IDEA") because the DOE did not address his concerns about J.B.'s transition.

The majority notes that the IDEA requires an IEP to describe what "supplementary aids and services" will be made available to the student when these resources will allow the student to "be educated and participate with other children with disabilities and nondisabled children." The majority then concludes that transition services qualify as supplementary aids and services when "transition services become necessary for disabled children to 'be educated and participate' in new academic environments[.]" The majority then holds that the school district violated the IDEA because J.B.'s IEP did not list what transition services would be offered to J.B.

However, the DOE in fact listened to R.E.B.'s concerns about J.B.'s transition and tried to address them at a "transfer plan meeting" held on June 13, 2012. The principal of Koko Head Elementary School stated that the purpose of the meeting was "to consider [J.B.'s] possible needs to minimize potential harmful effects in the transfer from PAC to a public school campus." The school district decided at that meeting that, to ease J.B.'s transition, J.B. would gradually transition during the summer from PAC to Koko Head and J.B. would not be "mainstreamed" (educated in a general education setting with nondisabled peers) during this summer transition. The DOE decided that this gradual transition would avoid

anxiety that could potentially overwhelm J.B. Thus, the DOE responded to R.E.B's concerns about J.B.'s transition and made a plan to facilitate that transition that would help J.B. adapt to his new school. The IDEA does not state that an IEP must list what transition services will be made available to a student. Therefore, I would hold that the DOE did not violate the IDEA even though J.B.'s IEP did not list transition services that would be provided to him.

### 2.  The Least Restrictive Environment Issue

J.B.'s IEP states that J.B.

> will not participate with nondisabled peers for Reading, Writing, Math, Science, Social Studies, Speech/Language Therapy and Occupational Therapy. [J.B.] will participate with nondisabled peers for Library, Music, PE, Art, Computer, Hawaiian Studies, Mandarin, recesses, lunch, field trips, assemblies and school-wide activities. [J.B.] will also receive specialized instruction in the general education setting for Science and Social Studies activities as deemed appropriate by his Special Education teacher/Care Coordinator and General Education teacher.

R.E.B. contends that the DOE violated the IDEA because J.B.'s IEP did not specify the Least Restrictive Environment ("LRE") for J.B.

The majority appears to have no problem with the first two sentences quoted above, which state the academic

subjects and parts of the school day that J.B. will not participate with nondisabled peers and the times that he will. However, the majority faults the DOE for including the final sentence quoted above: "[J.B.] will also receive specialized instruction in the general education setting for Science and Social Studies activities as deemed appropriate by his Special Education teacher/Care Coordinator and General Education teacher." According to the majority, this sentence in the IEP was an improper delegation to J.B.'s teachers, was "too vague to allow R.E.B. [J.B.'s father] to use the IEP as a blueprint for enforcement" and violated the IDEA's requirement that an IEP must provide details about what specialized instruction will be provided to students with disabilities. Also, the majority states that the IEP gave just a "cursory treatment" of the *Rachel H.* factors when deciding how much specialized instruction J.B. would receive. According to the majority, in so doing, the DOE denied J.B. a Free Appropriate Public Education ("FAPE").

I would hold that the DOE did not violate the IDEA's LRE requirement. 20 U.S.C. § 1412(5)(A) states:

> To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

Regulations interpreting the IDEA state that the IEP must include "(5) An explanation of the extent, if any, to which the child will not participate with nondisabled children in the regular class."  34 C.F.R. § 300.320(a)(5).

The DOE did include such an explanation in J.B.'s IEP. In my view, this explanation was sufficient because the IEP team (which included the Koko Head principal, J.B.'s future teachers, and R.E.B.) decided for all academic subjects, as a general matter, whether J.B. would participate with nondisabled peers.  The IEP then delegated to J.B.'s teachers the decision to have J.B. participate with nondisabled peers for certain "Science and Social Studies activities" even though, as a general matter, J.B. would not participate with nondisabled peers for these subjects.  This nuanced determination was reasonable because, as part of the Science curriculum and the Social Studies curriculum, elementary school students often perform experiments, simulations, and field trips—the activities alluded to.  Given J.B.'s autism, it was reasonable for the IEP team to conclude that he would be able to participate successfully with nondisabled peers for some of these activities, but not for others, and that which particular Science and Social Studies activities would be appropriate for J.B. could not be determined at an IEP meeting months or years before those activities happened. Therefore, it was reasonable for J.B.'s IEP to specify that J.B.'s "Special Education teacher/Care Coordinator and General Education teacher" would decide together which particular activities J.B. would participate with nondisabled peers with the benefit of specialized instruction.

The majority finds fault with a sentence in J.B.'s IEP that facilitated J.B. "being educated with children who are not disabled" by giving J.B.'s teachers the authority to decide that

he could participate with nondisabled peers for certain Science and Social Studies activities. Presumably, had J.B.'s IEP not included that sentence and stated that J.B. will not participate with nondisabled peers for Science and Social Studies *entirely*, without exception, that decision would have withstood review by this appellate court. Since the IDEA states that children should be educated with nondisabled peers "to the maximum extent appropriate," 20 U.S.C. § 1412(5)(A), I would respect the school district's attempt to achieve that goal in J.B.'s IEP.

Moreover, the majority cannot find binding legal authority for the proposition that this provision of J.B.'s IEP was an "improper delegation" and "too vague" to allow the father to use the IEP for enforcement. Instead, the majority cites a case in which we stated that school districts should provide a "formal, specific offer" about a child's educational placement. But *Smith* involved a school district that conceded that it "never formally offered [the student's family] a placement" at a particular school. *Id.* at 1525. In this case, the school district offered a particular placement, Koko Head Elementary School, and specified when during the school day J.B. would not participate with nondisabled peers and when he would participate with nondisabled peers.

Also, the majority contends that the school district's "cursory treatment" of the *Rachel H.* factors, which school districts use to assess whether a child should be educated with nondisabled peers or with other disabled peers, "'seriously infringed' J.B.'s father's opportunity to participate in the IEP process[.]" But the district court concluded that the IEP team "engaged in a thorough analysis that incorporated all four of the *Rachel H.* factors." Notes from, and an audio recording of, the May 7, 2012, IEP meeting confirm that the district

court was right.  The IEP team discussed the *Rachel H.* factors for *nearly an hour* at an IEP meeting.  During this time, the members of the IEP team completed a worksheet that helped the team understand how the different *Rachel H.* factors cut in favor of educating J.B. with nondisabled peers or with other disabled peers.

### 3.  The Applied Behavioral Analysis Issue

At PAC, the private school, J.B.'s teachers had used Applied Behavioral Analysis ("ABA"), a teaching methodology for students with autism.  R.E.B. wanted the DOE to specify in J.B.'s IEP that ABA methodology would be used with J.B.  At an IEP meeting on May 9, 2012, J.B.'s father directly stated that he expressed a strong preference for "pure VB-MAPP," a particular type of ABA methodology. However, at that meeting, J.B.'s future teachers stated that they thought it was best to use *multiple* methodologies with J.B.  A special education teacher stated that she would "work[] off the data submitted by PAC" and then described a number of methodologies she would use with J.B., including "natural environment training," "things they use in OT [occupational therapy] and speech [therapy]," and "[various] reinforcers and motivators."  The principal and the teachers explained that they did not want to specify ABA methodology in the IEP because the teachers wanted to use more than one methodology.  As a result, J.B.'s IEP did not specify any particular methodology.

R.E.B. contends that the DOE violated the IDEA by not specifying ABA methodology in J.B.'s IEP, and the majority agrees.  The majority notes that the IEP team discussed ABA at length and recognized it was an important component of J.B.'s education.  Also, the majority states that "ABA is

widely recognized as a superior method for teaching children with autism."  Finally, the majority relies on our decision in *J.L. v. Mercer Island DOE*, 592 F.3d 938 (9th Cir. 2009), in which we recognized that school districts sometimes should specify a teaching methodology in a student's IEP.

*J.L.* does not provide much guidance about when a school district should specify a teaching methodology in an IEP beyond stating that doing so is necessary for some students. *See id.* at 952.  However, the facts of *J.L.* suggest that the DOE was not required to specify ABA methodology in J.B.'s IEP.  In *J.L.*, "[t]he District [] declined to name a particular teaching methodology to be utilized by all teachers because its experts recommended several effective programs, not just a single 'right' choice."  592 F.3d at 945.  After the district court held that the school district committed a procedural violation of the IDEA in so doing, we reversed.  *Id.* at 952, 54.  As we explained:

> We accord deference to the District's determination and the ALJ's finding that [the student's] teachers needed flexibility in teaching methodologies because there was not a single methodology that would always be effective.  We hold that the District did not commit a procedural violation of the Individuals with Disabilities Education Act by not specifying teaching methodologies in [the student's] individualized educational programs[.]"

*Id.* at 952.  This case is similar.  J.B.'s teachers thought it was best to use multiple teaching methodologies with J.B.  They

wanted the flexibility to select the methodology that best fit J.B.'s needs as they arose.

In response, the majority states that "specifying ABA in writing would not have precluded the use of other methodologies." But this pivot is not supported by legal authority. Moreover, this response is in conflict with *J.L.* because, if true, we should have affirmed in *J.L.* since the school district in *J.L.* could have specified in the student's IEP the methodology preferred by her parents without precluding the use of other methodologies. Given this precedent and the deference we owe to J.B.'s teachers who thought it was best to use multiple teaching methodologies, I would hold that it was not necessary to specify in J.B.'s IEP that the ABA methodology would be used.