**BOARD OF EDUCATION OF THE AVON LAKE CITY SCHOOL DISTRICT, Petitioner–Appellant,**

v.

**PATRICK M. By and Through his parents, LLOYD and FAITH M., Respondents–Appellees.**

No. 1:97–CV–973.

United States District Court, N.D. Ohio, Eastern Division.

June 18, 1998.

Timothy J. Sheeran, Squire, Sanders & Dempsey, Cleveland, OH, David K. Smith, Means, Bichimer, Burkholder & Baker, Cleveland, OH, for Avon Lake City School District, Board of Education, Clayton Dusek, Terrence Ryan, David Updegraff, Michael Kearns, Michael Mannino, Barbara McGrath, Barbara Dalgleish, William Hamilton, Daniel Ross.

Margie Best, Oak Park, IL, for Lloyd M., Faith M.

Roger F. Carroll, Office of the Attorney General, Education Section, Columbus, OH, for State of Ohio Department of Education.

## OPINION AND ORDER

GWIN, District Judge.

On October 3, 1997, Petitioner Board of Education of the Avon Lake School District ("Avon Lake") filed a motion for summary

judgment on the administrative record pursuant to the Individuals With Disabilities Act, 20 U.S.C. § 1415(e) ("IDEA") [Doc. 31].[1] On October 30, 1997, Respondents Lloyd and Faith M., on behalf of their minor son Patrick M. (collectively "Patrick M."), filed an opposition and cross-motion for summary judgment [Doc. 38]. In its motion, Petitioner Avon Lake appeals the final administrative decision of an Ohio State Level Review Officer favoring Respondents Patrick M. and requiring the District to reimburse Respondents Patrick M. for costs related to their son's attendance at a private educational facility for the 1995–1997 school years. In response, Respondents Patrick M. seek reimbursement of costs and attorney fees incurred by this litigation.

In ruling on the instant motions, the Court decides whether attorney Robert Armbruster, the state level review officer assigned to this case, erred in requiring the Avon Lake School District to reimburse Respondents Patrick M. the expenses for Patrick's attendance at the Elan School, a residential school located in Poland Springs, Maine. To decide this, the Court addresses the following issues: (1) whether the Avon Lake School District provided Patrick M., a learning and behavioral handicap child, with a "free appropriate public education" as required by IDEA; (2) whether the District's "individual educational program" afforded Patrick a meaningful educational benefit, given his special needs; (3) whether Patrick's placement at the Elan School was reasonable and proper under IDEA, including the extent to which Respondents unilaterally made their decision to withdraw Patrick from Avon Lake and enroll him at Elan; and (4) whether Respondents Patrick M. are entitled to be reimbursed the expenses of Patrick's private education.

For the reasons that follow, the Court concludes that Petitioner Avon Lake did offer Patrick an "individual education program" that afforded him a suitable and meaningful educational benefit. As related, the Court concludes that Petitioner Avon Lake did provide Patrick with a "free appropriate public education" satisfying the requirements of IDEA. The Court further concludes that Patrick's parents' decision to enroll Patrick at the Elan School was made unilaterally and without the consent or referral of Petitioner Avon Lake. Accordingly, the Court grants Petitioner Avon Lake's motion for summary judgment on the administrative record and reverses State Level Review Officer Armbruster's March 18, 1997, decision requiring the District to reimburse Respondents Patrick M. the costs for Patrick's attendance at Elan.

■ Because public educational authorities can escape reimbursing parents for the private education of a disabled or handicapped child by ensuring that the child is provided with a free appropriate public education, reviewing courts should first review the record to determine if the facts establish that the school district's individualized programs provide the disabled student some educational benefit.

### I

Patrick M. is a 17–year old teenager with multiple disabilities, including specific learning disabilities in the areas of reading and writing, a severe behavioral disability and attention deficit hyperactivity disorder. Patrick is a resident of Lorain County, Ohio, and for the academic years 1988 through 1995, he attended public school in the Avon Lake School District. In February 1989, while in second grade, Patrick was diagnosed as

---

1. 20 U.S.C. § 1415(e)(2) provides:
 (2) Any party aggrieved by the findings and decision made under subsection (b) of this section who does not have the right to an appeal under subsection (c) of this section, and any party by the findings and decision under subsection (c) of this section, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district

court of the United States without regard to the amount in controversy. In any action brought under this paragraph the court shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(e)(2).

learning disabled. He was classified by Petitioner Avon Lake as a special needs student and was required to participate in a developed individual educational program. During his seventh grade year, a deterioration in Patrick's school behavior led school officials to refer Patrick to a private psychologist for evaluation and counseling. Before his eighth grade year, Patrick underwent testing for severe behavior disability. The tests resulted in a recommendation that Patrick be placed in the District's transitional learning center program.

Near September 27, 1994, Patrick began the transitional learning center program. The program emphasized individual instruction in a small, structured classroom setting. From the period of his enrollment through November 1994, Patrick's behavior and academic performance improved. From the period November 23, 1994, through May 19, 1995, Patrick had no reported disciplinary incidents. Patrick's parents reported that his behavior at home had also improved.

In March 1995, during Patrick's eighth grade year, Petitioner Avon Lake administered the Kaufman Test of Educational Achievement. This test assesses academic achievement against the general population of Patrick's peers. Patrick scored average for his age group in the areas of reading comprehension, math reasoning, math computation, science, social studies, and humanities. Patrick scored below average in reading and written expression. Reading and writing were Patrick's primary areas of disability. However, Patrick's overall performance, when compared to his scores on the same test administered two years earlier, showed improvement—particularly during Patrick's eighth grade year.

On March 24, 1995, Patrick's parents authorized his enrollment in the District's ninth grade severe behavior handicap program at Avon Lake High School. However, on April 12, 1995, Patrick went to school with two unloaded guns, ammunition, and a broken stiletto. Patrick was suspended pending an investigation of whether the conduct was related to his disability.[2] Patrick was immediately sent to the Lorain County Juvenile Detention Home where he remained from April 12, 1995 to May 3, 1995. While there, Patrick received tutoring at the District's expense.

Following his release from the detention center, Patrick was placed on house arrest and into a structured probation schedule. Patrick remained on house arrest through most of the summer of 1995. The probation program included tutoring by his eighth grade instructor, Ms. Linda Schanz. Patrick received excellent reports from the probation department and from Mrs. Schanz. However, Patrick's behavior again became an issue in June 1995. On June 16, 1995, Patrick's parents admitted him to the psychiatric unit of the St. Joseph Hospital after an outburst toward his father. Patrick was released from St. Joseph's the next day. Despite requests to the contrary, Patrick's parents failed to notify Ms. Schanz or school administrators that Patrick had been released and was available to resume his tutoring.

In early August 1995, Petitioner Avon Lake personnel began to contact Respondents Patrick M. about plans for Patrick's ninth grade year (1995–96). Avon Lake District Superintendent, Dr. Dusek, spoke with Patrick's mother and told her that the District planned to enroll Patrick in a new severe behavior unit at the high school. Ms. Schanz was scheduled to teach the unit. In mid-August, school psychologist Barbara Dalgleish also contacted Patrick's mother to finalize Patrick's schedule for the Fall. During their conversation, Patrick' mother inquired whether the District either offered or could recommend a publicly–funded residential program for Patrick. After researching the issue, Ms. Dalgleish informed Respondents Patrick M. that residential programs were available and that the District did make referrals, if appropriate.

In late August 1995, Patrick's parents withdrew him from Avon Lake and enrolled him in Elan. Near August 23, 1995, Petitioner Avon Lake received a letter from Respondent Patrick M.'s parents seeking to be reim-

2. In early May 1995, members of Patrick's individual education program team met and determined that the gun incident was not related to his disability.

bursed approximately $71,971.04 in expenses associated with Patrick's placement at Elan. Respondents Patrick M. sought a due process hearing to determine whether they were entitled to reimbursement.

Beginning June 18 through July 3, 1996, attorney Niki Schwartz, the independent hearing officer for the case, conducted a due process hearing pursuant to Ohio Admin.Code § 3301–51–02. The purpose of the hearing was to consider Respondents Patrick M.'s claim for reimbursement. On January 15, 1997, Schwartz denied the claim for reimbursement, finding "the law does not require [Avon Lake] to pay for [Elan]." Respondents Patrick M. appealed Schwartz's ruling to the State Board of Education pursuant to Ohio Admin.Code § 3301–51–02(G)(12).[3]

On March 18, 1997, attorney Robert Armbruster, the state level review officer assigned to the case, reversed Schwartz's decision. On April 18, 1997, Petitioner Avon Lake filed this action seeking to reverse State Level Review Officer Armbruster's decision favoring Respondents Patrick M. and requiring reimbursement.

In July 1997, after two years at Elan, Patrick returned to Avon Lake. He is currently enrolled in the District's Occupational Work Experience Program. This program provides individualized assistance and targets both learning and behavioral disabilities. On October 15, 1997, Petitioner Avon Lake issued a $50,000.00 check to the Elan School as payment for Patrick's school. Despite issuing the check, Petitioner Avon Lake maintains that reimbursement is not legally required.

## II. Issues

Petitioner Avon Lake argues that Respondents Patrick M. are not entitled to reimbursement and that summary judgment in this case is appropriate because: (1) Petition-

er Avon Lake's individual education programs were reasonably calculated to afford Patrick a meaningful educational benefit; (2) Patrick's parents cannot show that the District's individual educational program's for Patrick fail to meet the requirements of IDEA; and (3) Petitioner Avon Lake's educational programs allow Patrick to be educated in the least restrictive educational environment and, as such, Patrick's placement at Elan was improper under IDEA. In response, Respondents Patrick M. say that State Level Review Officer Armbruster properly found Petitioner Avon Lake's individual educational program's inadequate under IDEA and that Respondents Patrick M. are entitled to reimbursement.

## III. Standard of Review

■ The standard of review used by courts reviewing cases under IDEA differs from the traditional summary judgment standard outlined in by *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), and *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 158–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Under IDEA, a reviewing court must apply a "modified de novo review" standard. *Board of Educ. of Hendrick Hudson Central Sch. Dist. v. Rowley,* 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). This means that the court should perform a *de novo* review of the record, including the decisions of the state level and independent hearing officers, and the materials considered in the underlying state administrative proceedings. *Id.* at 206, 102 S.Ct. 3034. Whether a given educational program is appropriate is a mixed question of fact and law, ordinarily freely reviewable on appeal. *Doe v. Board of Educ. of Tullahoma City Schs.,* 9 F.3d 455 (6th Cir.1993), *cert. denied,*

---

**3.** The legislative history of IDEA explains the intended purpose of due process hearings as follows:

> If a parent contends that he or she has been forced, at that parent's own expense, to seek private schooling for the child because an inappropriate program does not exist with the local educational agency responsible for the child's education and the local educational agency disagrees, that disagreement and the

question of who remains financially responsible is a matter to which the due process procedures established under the [predecessor to § 1415 apply].

*School Comm. of Town of Burlington, Mass. v. Department of Educ. of Mass.,* 471 U.S. 359, 371, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1975) (quoting S.Rep. No. 94–168, p. 32 (1975), U.S.Code & Admin.News 1975, pp, 1425, 1456).

511 U.S. 1108, 114 S.Ct. 2104, 128 L.Ed.2d 665 (1994); *Clevenger v. Oak Ridge Sch. Bd.*, 744 F.2d 514, 516 (6th Cir.1984).

■ Under the modified *de novo* review standard, a court is to "give due weight to the state administrative proceedings in reaching its decision." *Doe*, 9 F.3d at 458 (quoting *Roncker on Behalf of Roncker v. Walter*, 700 F.2d 1058, 1062 (6th Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 171 (1983)); *Neely v. Rutherford County Sch.*, 68 F.3d 965, 968–69 (6th Cir. 1995), *cert. denied*, 517 U.S. 1134, 116 S.Ct. 1418, 134 L.Ed.2d 543 (1996). "Due weight," however, does not mean that the reviewing court can simply adopt the findings of the state administrative officers. *Doe*, at 458. Furthermore, if the reviewing court finds that genuine issues of material fact are in dispute, the court may not weigh the evidence and the matter must go to trial. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Tennessee Dep't of Mental Health v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir.1996) (using the traditional summary-judgment standard in an IDEA context).[4]

■ Additionally, courts reviewing administrative appeals under IDEA should avoid substituting "their own notions of sound educational policy for those of the school authorities which they review," and derive the due weight requirement from "[t]he fact that § 1415(e) requires that the reviewing court 'receive the records of the [state] administrative proceedings....'" *Doe v. Metropolitan Nashville Public Schs.*, 133 F.3d 384, 386 (6th Cir.1998), *petition for cert. filed*, 66 USLW 3750 (U.S. May 13, 1998) (No. 97–1830) (citations omitted). Courts should also be mindful that the parents, as the party contesting placement, must prove both that the school district denied the student a "free appropriate public education," and that the parents' unilateral placement of the child in a private educational program was proper. *Florence County Sch. Dist. v. Carter*, 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993).

## IV

The IDEA was enacted to ensure that children with disabilities, such as Patrick, receive an education that is both appropriate and free. *Florence County*, 510 U.S. at 7, 114 S.Ct. 361; *Rowley*, 458 U.S. at 181, 102 S.Ct. 3034 (1982). IDEA defines a "free and appropriate education" as follows:

> The term "free and appropriate education" means special education and related services that—(A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized education program required under section 1414(a)(5) of this title.

20 U.S.C. § 1401(18). See also *Burlington v. Dept. of Educ. of Mass.*, 471 U.S. 359, 367–68, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). The Act requires school districts to develop and offer a curriculum that is designed to meet a student's special needs. *Cleveland Heights–University Heights City Sch. Dist. v. Boss*, 144 F.3d 391, 397 (6th Cir.1998).

---

4. Summary judgment requires that there be no disputed issues of material fact; that the facts be viewed in the light most favorable to the non-movant; and that the movant be entitled to a judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. *See also Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 892 (9th Cir.1995) ("Though the parties may call the procedure a 'motion for summary judgment' in order to obtain a calendar date from the district court's case management clerk, the procedure is in substance an appeal from an administrative determination."); *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472 (9th Cir.1993), *cert denied*, 513 U.S. 825, 115 S.Ct. 90, 130 L.Ed.2d 41 (1994) (treating summary judgment motion as bench trial based on stipulated record). The *Capistrano* court wondered "what else the district court could do as a practical matter." *Id.* It is true that a district court in that situation would have nothing to do other than to decide the case based on the record. The distinction between a review of the ALJ's decision on a closed record and summary judgment is substantive—a very different standard is applied—rather than merely procedural. *Doe*, 133 F.3d at 386–87.

In *Bd. of Educ. of Hendrick Hudson v. Rowley*, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), the United States Supreme Court found that neither IDEA nor its legislative history provides a substantive standard defining what level of education amounts to a "free appropriate public education." *Id.* at 189, 102 S.Ct. 3034. The Court did conclude, however, that "adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content of an individual educational program." *Id.* at 206, 102 S.Ct. 3034. The Court stated that "a court's inquiry in suits brought under § 1415(e)(2) is twofold. First, has the state complied with the procedures set forth in the Act? And second, is the individualized educational program developed through the Act's procedures reasonably calculated to enable the child to receive educational benefits?" *Id.* at 206, 102 S.Ct. 3034.

In *Doe v. Defendant I*, 898 F.2d 1186 (6th Cir.1990), the Sixth Circuit recognized the procedural mandate set forth by *Rowley:*

> *Rowley* recognized the conflict between the need for judicial oversight to guarantee compliance with the Act and the fact that courts, having less competence in matters of educational policy, should defer to the substantive decisions of educators and parents in fashioning appropriate individual educational program's. It resolved this conflict by requiring adherence to the procedural demands of the Act, while giving utmost deference to specific educational decisions once it is determined that they stem from the procedures outlined in the Act.

*Id.* at 1188–89. See also *Cordrey v. Euckert*, 917 F.2d 1460, 1469 (6th Cir.1990), *cert denied*, 499 U.S. 938, 111 S.Ct. 1391, 113 L.Ed.2d 447 (1991).

 The burden of showing whether the District provided a free, appropriate public education rests with parents who are challenging the effectiveness of the proposed independent educational program. *Doe v. Board of Educ. of Tullahoma City Schs.*, 9 F.3d 455, 458 (6th Cir.1993) (stating that "parents bear the burden of proving by a preponderance of the evidence that the indi-

vidual educational program devised by [a school district] is inappropriate."). Assuming that the parents meet this initial burden, they must then show that their decision to place the student in a private facility was proper. It is well-settled that parents whose children were once enrolled in the public school system "act at their own risk when they unilaterally move a child to a different school." *Doe v. Metropolitan*, 133 F.3d at 387.

## V

In its motion for summary judgment, Petitioner Avon Lake says that Respondents Patrick M. do not establish that the District failed to provide Patrick a "free and appropriate education." In this regard, Petitioner Avon Lake argues the District's proposed individual educational program for Patrick's ninth grade year satisfies IDEA requirements and affords Patrick some meaningful educational benefit. In response, Respondents Patrick M. say the District's programs are inadequate, given the severity of Patrick's learning and behavioral disabilities. To decide this issue, the Court reviews the administrative decisions of State Level Review Officer Armbruster and Hearing Officer Schwartz. The Court then reviews the record to determine if there is evidence to support either conclusion.

The parties do not dispute that Petitioner Avon Lake provided Patrick with "independent education programs" from the time his disabilities were first detected in second grade until his withdraw from the school district immediately before his ninth grade year. For purposes herein, the relevant educational program at issue is the District's individual educational program developed for Patrick's 1995–96 academic year (ninth grade). The Court also considers individual educational program's developed for Patrick's earlier years (seventh and eighth grade) to the extent these evidence adequate compliance with IDEA.

 To comply with the requirements of IDEA, school systems must formulate an individualized education program for each handicapped child at the beginning of each

school year. 20 U.S.C. § 1414(a)(5). Although the individual educational program must be "reasonably calculated to afford some educational benefit to the disabled child," the program does not need to maximize the child's potential or provide services beyond a "basic floor of opportunity." *Rowley*, 458 U.S. at 198–201, 206, 102 S.Ct. 3034. Under IDEA, specifically § 1401(19), an individualized education program must include the following:

(A) a statement of the present levels of educational performance of such child, (B) a statement of annual goals, including short-term instructional objectives, (C) a statement of the specific regular educational services to be provided to such child, and the extent to which such child will be able to participate in regular educational programs, (D) the projected date for initiation and anticipated duration of such services, and (E) appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved.

20 U.S.C. § 1401(19). The above requirements are to be used to define the adequacy of school district's proposed individualized education program. Minor technical deviations may be excused. *Defendant I*, 898 F.2d at 1190–91 (citation omitted). When defending the adequacy of a proposed individual education program, a school district "need only show that its alternative program confers some educational benefit." *Kerkam v. Superintendent*, 931 F.2d 84, 87 (D.C.Cir. 1991). See also *Hall v. Shawnee Mission Sch. Dist.*, 856 F.Supp. 1521, 1528 (D.Kan. 1994).

### A. The Proposed 1995–96 Individual Educational Program

As previously noted, IDEA requires that a school district's individualized education program be reasonably calculated to afford students with disabilities some educational benefit. In determining whether an individualized education program is reasonably calculated to afford some educational benefit, courts must subject the IEP at issue to strict review. *Doe v. Defendant I*, 898 F.2d 1186, 1190 (6th Cir.1990). Although the

United States Supreme Court has cautioned district courts from "imposing their view of preferable educational methods" upon school systems, courts should nonetheless closely evaluate whether the individual education program "conforms with requirements of § 1401(19)." *Id.* at 1189–90 (quoting *Rowley*, 458 U.S. at 206–07 n. 27, 102 S.Ct. 3034). Thus, IDEA "creates a presumption in favor of the educational placement established in a child's individual educational program." *Christopher M. v. Corpus Christi Indep. Sch. Dist.*, 933 F.2d 1285, 1290–91 (5th Cir.1991).

The first element of § 1401(19) requires a school district's individualized education program to include "a statement of the present levels of educational performance of [the] child." 20 U.S.C. § 1401(19)(A). The individual educational program proposed for Patrick's ninth grade year meets this requirement. Specifically, the individual educational program details Patrick's academic performance, his educational evaluations, his social and emotional skills, and his cognitive reasoning abilities. The individualized education program also describes Patrick's trouble areas including weakness in the areas of written assignments, reading and math. The IEP also addresses Patrick's need to improve his organizational skills and to control his impulsive behavior. The individualized education program further proposes methods of intervention and modification to help Patrick overcome his deficiencies. The Court finds that Patrick's proposed ninth grade individual educational program procedurally satisfies the first requirement of § 1401(19).

IDEA next requires an individualized education program to include "a statement of annual goals, including short-term instructional objectives." 20 U.S.C. § 1401(19)(B). This requirement is also met. The District's proposed 1995–96 individual educational program outlines numerous long-term goals to be accomplished. These goals are supplemented by meeting certain short-term objectives. Patrick's goals focus on improving his class attendance, increasing his performance on tests and quizzes, improving his self-esteem, controlling his temper and behavior, and learning to express his feelings

in an appropriate manner. Both the long-term and short-term goals provide methods and criteria for evaluation. The District's 1995–96 individual educational program adequately satisfies § 1401(19)(B).

■■■ The third requirement says the individual educational program must include "a statement of the specific educational services to be provided to each such student, and the extent to which such child will be able to participate in regular educational programs." 20 U.S.C. § 1401(19)(C). The District's proposed 1995–96 individual educational program indicates that Patrick's academic and non-academic programs required his participation in science, math, art, industrial art, physical education and lunch. Although the individual educational program does not identify specific course times, the extent of his participation and his projected ability to perform in these areas is discussed at length in the individual educational program. The Court concludes that any minor or technical omission relating to the individual educational program's failure to identify course times or class periods is excusable. See *Cleveland Heights–University Heights v. Boss,* 144 F.3d 391, 398 (6th Cir.1998); *Doe v. Defendant I,* 898 F.2d 1186, 1190–91 (6th Cir.1990).

■■■ The fourth requirement under § 1401(19) requires that the individual educational program include "the projected date for initiation and anticipated duration of such services." § 1401(19)(D). The District's proposed 1995–96 individual educational program shows that Petitioner Avon Lake was to provide services starting on August 28, 1995, and continuing through June 7, 1996. Accordingly, this requirement is met. The final requirement under the Act requires an individual educational program to include "appropriate objective criteria and evaluation procedures and schedules for determining, on at least an annual basis, whether instructional objectives are being achieved." § 1401(19)(E). Again, the District's proposed 1995–96 for Patrick meets this requirement. In additional to outlining long-term goals which are in-turn supported by short-term objectives, each goal on the proposed 1995–96 individual educational program is broken down into methods of achieving the goal or objective, the service providers involved in the process (teachers, students, or through special instruction), and the criteria to be used when monitoring Patrick's progress. The individual educational program shows that Patrick's progress was to be monitored by daily and weekly attendance records, weekly grades, and quarterly progress reports. Some of Patrick's short-term objectives were monitored with task sheets and staff/teacher observation. The individual educational program also shows that Patrick was to undergo an annual review.

■■■ Having reviewed the contents of Petitioner Avon Lake proposed individual educational program for Patrick's ninth grade year (1995–96), the Court finds that the District developed and provided an individualized educational program for Patrick that, at a minimum, offered a "basic floor of opportunity" for Patrick to have access to some specialized instruction and related services. See *Rowley,* 458 U.S. at 198–201, 102 S.Ct. 3034.

■■■ Furthermore, a review of the District's other individualized education programs for Patrick, specifically those developed for Patrick's sixth, seventh and eighth grade years, shows that Petitioner Avon Lake satisfied the procedural requirements of 20 U.S.C. § 1401(19). Like the 1995–96 individual educational program, all of these programs were authorized or signed by Patrick's parents. Furthermore, there is no evidence that Respondents Patrick M. at any time objected to the District's proposed programs for Patrick.

**B. Findings of State Level Review Officer Armbruster**

In his March 18, 1997 decision and final order, State Level Review Officer Armbruster addressed twelve issues relating to the adequacy of Petitioner Avon Lake's proposed educational programs for Patrick.[5] After re-

---

5. When reviewing Respondents Patrick M.'s appeal from the administrative ruling of Independent Hearing Officer Schwartz, State Level Review Officer Armbruster addressed the following

viewing the hearing transcripts and accompanying exhibits, Armbruster concluded that the District's individualized services for Patrick failed to satisfy the requirements of 20 U.S.C. § 1401(19). Although Armbruster found that the state level administrative hearings were conducted in a manner consistent with the requirements of IDEA, Armbruster determined the District's eighth grade and proposed ninth grade individual educational program's failed to sufficiently accommodate Patrick disabilities.

First, Armbruster found that Petitioner Avon Lake's individual educational program for Patrick's eighth grade year failed to address all of his disabilities. Armbruster also concluded that Patrick's academic and behavioral progress during eighth grade was questionable, given evidence that Patrick's regular presence in the classroom and lunch room "was a disaster." Based on reports from teachers, Armbruster also concluded that Patrick was unable to work independently in class and that he needed constant help and supervision. As related, Armbruster found that the District's transitional learning program, where Patrick was placed for eighth grade, failed to provide Patrick with the quality of special services he had received in the past. Armbruster further criticizes the District for continually "passing" Patrick into the next grade level despite his failing grades.

Second, after evaluating the adequacy of Petitioner Avon Lake's proposed ninth grade individual educational program, Armbruster likewise found the District's program inappropriate for a student with Patrick's disabilities. Armbruster comments that the ninth grade program's inclusion of "mainstreaming" Patrick into regular science, math, art, industrial art and physical education classes

was unreasonable since Patrick had little success in previous classroom settings. Armbruster also determined that the proposed ninth grade individual educational program failed to clearly establish specific goals and failed to identify Patrick's previous inability to meet goals in prior years.

Armbruster lastly considered Petitioner Avon Lake' handling of the gun incident and Patrick's subsequent suspension. Here, Armbruster criticizes the District's failure to notify Patrick's parents and keep written records of meetings that were held when determining whether the incident was related to Patrick's disability. Armbruster also concluded that Petitioner Avon Lake's handling of Patrick's expulsion from school in April of 1995, was inadequate since the District failed to notify Respondents Patrick M. of how long the expulsion would last, and the extent to which Patrick would receive home tutoring. Armbruster found the quality and quantity of Patrick's home tutoring was minimal.

 Having reviewed the evidence and the record as a whole, the Court disagrees with Armbruster's conclusions. Specifically, the record shows evidence that Patrick's parents approved of an authorized all of Petitioner Avon Lake's proposed individual educational programs developed for Patrick. This is evidenced by the parents' signatures or references to telephone approval during conferences. The evidence also shows that Patrick's academic performance in the eighth grade, as well as his overall behavior, generally improved. Furthermore, the record gives no evidence that either Patrick himself, or his parents, at any time expressed dissatisfaction with Petitioner Avon Lake's efforts or programs.

twelve issues: (1) Were the procedures at the hearing consistent with the requirements of law? (2) Were the student's individualized education programs and placement inadequate in past years? (3) Have the parents of the student met both prongs of the Burlington test for retroactive reimbursement of the cost of educating the student? (4) Was the student illegally suspended and expelled beyond legal timelines, and without adequate educational services? (5) Was the mainstreaming of the student the least restrictive environment? (6) If the school district is responsible for the cost of residential placement, should those costs be apportioned between the parents and the school district? (7) Did the Avon Lake School District fail to conduct a manifest determination prior to suspending the student? (8) Was the current individualized education program of the student inadequate? (9) Was the home tutoring for the student inadequate? (10) Did the student obtain educational benefits in the eighth grade? (11) Was there regression under the District's individualized education program for past years? and (12) Where the notice requirements of IDEA met for the student?

### C. The Findings of Hearing Officer Schwartz

In addition to the Petitioner Avon Lake's procedural compliance with the requirements of § 1401(19), the Court credits the factual and legal conclusions of Hearing Officer Schwartz after his hearing approximately five days of testimony in this case. The Court especially credits Schwartz's interpretation of Dr. Lee Maxwell's testimony, a psychologist who evaluated Patrick and the clinical director of the positive Education Program in Cleveland, Ohio. Dr. Maxwell's testimony confirms that the District's individual educational program for Patrick's 1995–96 academic year provided Patrick a meaningful educational benefit:

Q. Okay. Lee, did you have occasion to review the individual educational program that was prepared for Patrick for the 1995–96 school year, the ninth grade?

A. Yes, I did.

Q. That would be at 15.1? Do you have that—is that, in your opinion, a program from which Patrick would have derived educational benefit, both academically and behaviorally?

A. I think the program as set forth here certainly reflects his strengths and weaknesses, and certainly looks to me as though it would have been very appropriate for him.

\* \* \* \* \* \*

Q. Do you, based on your professional opinion, your review of the grades that Pat achieved in the TLC program in the eighth grade, is there an indication of learning growth, of educational benefit, to you?

A. Certainly. He's—Patrick's an average student, and with the exception of the science, which was, as I recall from the record, a mainstream program where he was having problems, the other four areas of math, reading, social studies and writing are all C's and better.

The Court also finds the following transcript testimony of Dr. Kenneth DeLuca, another psychologist who evaluated Patrick, particularly insightful:

Q. Did you feel in any way the school district had failed to address his disability?

A. No, I never felt that way. The school district was very cooperative, they were cooperative with me, they seemed to be cooperative with the parents, they seemed to be happy with what the school system tried to do.

In addition to this testimony, the Court credits Hearing Officer Schwartz's conclusions relating to Patrick's standardized test results and grade reports. This evidence shows that Patrick's performance in the District's transitional learning center program improved. In particular, Patrick's performance on the March 1995 Kaufman Test of Educational Achievement and the August 1995 Woodcock–Johnson test indicate that Patrick's level of accuracy improved. On both tests, Patrick scored average when compared to his non-learning disabled classmates. In the areas of his disabilities, he scored below average. However, Patrick's 1995 standardized testing scores, when compared to similar tests administered in March 1993, show that Patrick performed at a higher rate of accuracy. As related, the Court agrees with Petitioner Avon Lake's contention that standardize test scores provide a reliable measure of academic progress.[6]

The Court is similarly impressed by Patrick's reported eighth grade marks. These prove that Patrick's involvement in the District's transitional learning program resulted in some educational benefit. Although his grades are low when compared to those of his peers, Patrick's performance from the first semester through the third semester, overall shows improvement.[7] Although he

---

6. *See Mather v. Hartford Sch. Dist.,* 928 F.Supp. 437 (D.Vt.1996). In *Mather,* the district court found that the student there received a meaningful educational benefit despite poor grades, where "[h]is percentile of achievement in comparison with other students of his age remained constant, slightly below average in some areas and above average in others." *Id.* at 446.

7. Patrick's grades for the 1994–95 academic year (eighth grade) were reported as follows:

may not have performed at levels above his peers, Patrick's standardized test scores and eighth grade marks reflect academic improvement.

When viewed as a whole, the evidence above strongly indicates that Petitioner Avon Lake's educational programs were reasonably developed and calculated to enable Patrick to receive some educational benefit. Accordingly, the Court agrees with Hearing Officer Schwartz's conclusion that "Patrick's grades, test scores, and testimony of his teacher all indicated that the program was one in which Patrick had his most successful academic year and from which he certainly derived significant educational benefit within the meaning of *Rowley*."

## VI

Having decided that Petitioner Avon Lake's individualized education programs comply with the requirements of IDEA and are reasonably calculated to afford some educational benefit, the Court turns to whether Patrick's residential placement at Elan was necessary or proper under IDEA. Here, the Court decides whether Elan's educational programs are better suited to accommodate Patrick's developmental and behavior disabilities.

In the instant case, Petitioner Avon Lake suggests that Respondents Patrick M.'s decision to enroll Patrick at Elan was based on Respondents Patrick M.'s desire to avoid Patrick's incarceration in an Ohio juvenile detention center. In response, Respondents Patrick M. argue that Patrick's academic and behavioral disabilities required residential placement. Respondents Patrick M. specifically criticize Petitioner Avon Lake's practice of "mainstreaming" Patrick into a classroom environment where he historically failed.

The Sixth Circuit has recognized that "[t]he purpose of [IDEA] is not to provide free residential psychiatric treatment for a seriously emotionally disturbed child, but to provide for his special educational needs." *Tennessee Dep't. of Mental Health v. Paul B.*, 88 F.3d 1466, 1474 (6th Cir.1996). In order to determine whether a residential placement is appropriate, "a decision must be made whether full time residential placement is necessary for educational purposes as opposed to medical, social, or emotional problems that are separable from the learning process." *Id.* at 1471. After a review of the record, the Court does not find sufficient evidence that Patrick's placement at Elan was required or necessary, especially given the extent of the District's programs and the nature of Patrick's disabilities.

First, and as previously discussed, the individualized education programs available to Patrick in the Avon Lake School District were reasonably calculated to provide Patrick with an educational benefit. Second, after reviewing the record, the Court agrees with Hearing Officer Schwartz's conclusion that, when compared to Elan, the District's individualized education programs for Patrick permitted him to be educated in the least restrictive educational. The record includes substantial evidence that Elan's educational programs were not totally beneficial to Patrick.[8] The Court also finds that the

| | First Period | Second Period | Third Period | Fourth Period (before suspension) |
|---|---|---|---|---|
| Math | C | C | C+ | A |
| Reading | B− | C− | A− | A− |
| Social Studies | A− | B− | B | C |
| Writing | C− | C | C− | B− |

*See also* Ms. Linda Shanz's class record book for sixth through eighth grades.

8. Shortly after Patrick's arrival at Elan, school psychologist Dr. Greggus Yahr administered standardized tests to measure Patrick's knowledge and cognitive ability. Patrick's test results showed a "strong knowledge base" and confirmed disabilities in the areas of reading and written expression. A progress report of July 21, 1997, notes that Patrick's behavior progressively worsened while at Elan. Although Elan's progress reports do not detail the nature of Patrick's poor behavior, it is apparent that this disability intensified. A June 1997 report from Dr. Yahr indicates that Patrick M. did not show significant academic improvement while enrolled at Elan. Test results also show Patrick's writing level remained the same. After two years at Elan, Dr. Yahr also recommended that Patrick M. follow a vocational path.

District's practice of "mainstreaming" students with learning or behavioral disabilities is an appropriate, if not essential, element to fostering academic and social development.

 Title 20 U.S.C. § 1412(5)(B) requires states to ensure that handicapped children are educated "to the maximum extent appropriate" with children who are not handicapped. In lay terms, this requirement imposes a duty to "mainstream" students were appropriate. The Sixth Circuit stated its view concerning IDEA's mainstreaming requirement in *Roncker on Behalf of Roncker v. Walter,* 700 F.2d 1058 (6th Cir.1983). The court stated:

> The Act does not require mainstreaming in every case but its requirement that mainstreaming be provided to the maximum extent appropriate indicates a very strong congressional preference. The proper inquiry is whether a proposed placement is appropriate under the Act.

*Id.* at 1063. Following *Roncker,* this Court does not find that Petitioner Avon Lake's practice of mainstreaming was so improper such to justify Armbruster's order of reimbursement.

While the Elan School may be an appropriate educational facility for Patrick, it clearly provides a more restrictive educational environment than the public setting at Avon Lake. All students at Elan are learning disabled or handicapped children. In fact, Respondents Patrick M. recognize that the students at Elan generally do not interact educationally, socially, or emotionally, with non-learning disabled or non-handicapped students. Although Patrick has had difficulty adapting to Petitioner Avon Lake's mainstreaming, he experienced similar problems at Elan. By comparison, the District's special educational programs at least afford Patrick the opportunity to be educated in a setting that actively encourages contact with non-learning disabled students. Accordingly, the Court is not persuaded that Patrick's learning and behavioral disabilities are such to *require* private residential placement.[9]

Because the evidence does not support finding that Patrick's educational needs required his placement in a private, residential facility, in lieu of pursuing an education within the Avon Lake School District, the Court concludes that educating Patrick in the Avon Lake School District provides Patrick an opportunity to be educated in the least restrictive environment as required by IDEA. See 20 U.S.C. 1412(5)(B).

## VII

Petitioner Avon Lake last argues that it should not be required to reimburse Respondents Patrick M. for the costs related to Patrick's private placement at Elan because the evidence fails to show that the District violated IDEA, or otherwise failed to provide Patrick with an "appropriate and free" education. The District also argues that the Respondents Patrick M. are not entitled to reimbursement because Patrick's parents (1) neglected to properly inform the District that they were dissatisfied with the District's programs, and (2) neglected to properly notify the District of their plans to withdraw Patrick and enroll him at Elan.

 Parents are entitled to tuition reimbursement only when a court determines that the school district's programs or placement was improper under IDEA. *Florence County Sch. Dist. v. Carter,* 510 U.S. 7, 15, 114 S.Ct. 361, 126 L.Ed.2d 284 (1993). If the placement results for a "unilateral" decision by the student's parents, the parents are entitled to reimbursement only if the Court

---

**9.** Although the Court reaches this conclusion in the instant case, the Court is aware that there are certainly other cases where placement of learning disabled or handicapped students in segregated educational facilities is fully warranted. *See Doe v. Board of Educ. of Tullahoma,* 9 F.3d 455 (6th Cir.1993). There the Sixth Circuit quotes its earlier decision in *Roncker,* 700 F.2d at 1063, stating:

> Some handicapped children simply must be educated in segregated facilities either because

the handicapped child would not benefit from mainstreaming, because any marginal benefits received from mainstreaming are far outweighed by the benefits gained from services which could not feasibly be provided in the non-segregated setting, or because the handicapped child is a disruptive force in the non-segregated setting.

*Id.* at 459.

finds both that (1) the public placement violated the IDEA, and (2) the private placement under the Act was proper. *Id.* See also *Wise v. Ohio Dep't of Educ.*, 80 F.3d 177, 182 (6th Cir.1996); *Doe v. Metropolitan Nashville Public Schs.*, 133 F.3d 384 (6th Cir.1998), *petition for cert. filed*, 66 USLW 3750 (U.S. May 13, 1998) (No. 97–1830).[10]

In *Doe v. Metropolitan*, the Sixth Circuit recognized an important distinction "between parents who act unilaterally after consultation with the school system, and those who act unilaterally without any dialogue with the school". *Id.* at 387 (citation omitted). The court reasoned that in cases where school districts fail to communicate the availability of special needs services to a students parents, reimbursement may be appropriate. *Id.* However, in cases where the parents fail to communicate with the school district, reimbursement may be inappropriate. *Id.*

 In the instant case, the evidence shows that Respondents Patrick M. failed or neglected to take appropriate action to express their dissatisfaction with the District's programs or to inform the District that they were withdrawing Patrick from school. In fact, the evidence here suggests that Respondents Patrick M. purposefully waited to communicate their intention to withdraw Patrick until the latest possible moment. When school psychologist Barb Dalgleish spoke with Respondents Patrick M. in August 1995, Patrick's mother made no mention of Elan. This was likewise the case when Dr. Dusek, District Superintendent, called Respondents Patrick M. earlier that month. Although the evidence shows that Respondents Patrick M. did inquire about residential programs available through the school, there is no evidence that Respondents Patrick M. ever seriously considered or discussed these programs with Petitioner Avon Lake. Nor is there evidence that Respondents Patrick M. ever made an effort to specifically discuss or compare Elan's program with that offered by the District. To this end, the Court argues with Hearing Officer Schwartz's conclusion, as stated in his decision:

> Throughout this period, the Parents never contacted the District or gave it the opportunity to explore a number of intermediate, less restrictive local alternatives that would have been available.... [11]

Because the evidence shows that Respondents Patrick M. failed to take reasonable steps to communicate their dissatisfaction, if any, with Petitioner Avon Lake's educational programs for Patrick, and because Respondents Patrick M. failed to give the District an opportunity to discuss or correct the perceived deficiencies in Patrick's individual educational program's, the Court concludes that Respondents Patrick M. assumed the risk of unilaterally withdrawing Patrick from public school. As such, they are not entitled to be reimbursed for the expenses and cost associated with Patrick's private residential placement at Elan.

### VIII

Upon review of the record in this case, the Court concludes that there is insufficient evidence to show that Petitioner Avon Lake violated the applicable provisions of the individuals With Disabilities Act. 20 U.S.C. § 1401, *et seq.* Accordingly, the Court grants Petitioner Avon Lake's motion for summary judgment on the administrative record and reverses the decision of State Level Review Officer Armbruster. The Court further denies Respondents Patrick M. cross-motion for judgment as to attorney

---

**10.** *See also Burlington v. Dept. of Educ. of Mass.*, 471 U.S. 359, 374, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985) (stating: "If the court[ ] ultimately determine[s] that the individual educational program proposed by the school officials was appropriate, the parents would be barred from obtaining reimbursement....)"

**11.** *See also Doe v. Defendant I*, where the Sixth Circuit stated:

> Because we have determined that appellant's individual educational program was appropriate, he is not entitled to reimbursement for the cost of private schooling. Appellant's parents removed him from the free public school and placed him in a private school at their own peril. They are responsible for the cost of doing so.
> *Id.* at 1192.

828

fees and costs.[12]

IT IS SO ORDERED.

---

12. Wherein Respondents Patrick M. are not the prevailing party in this action, they are not entitled to attorney fees or costs under 20 U.S.C. § 1415(e). *Hensley v. Eckerhart,* 461 U.S. 424, 440, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).